UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| REALM METAVERSE REAL ESTATE INC., | Case No.: 25-cv-10057 |
| Plaintiff, | |
| -v- | COMPLAINT FOR VIOLATION OF THE SECURITIES ACT OF 1933 |
| NEON MACHINE, INC. and OGANESSON FACTORY LIMITED, | A jury trial is demanded |
| Defendants. | |

Plaintiff Realm Metaverse Real Estate Inc. ("MRE"), by its attorneys, Kerr LLP, complaining of the Defendants, respectfully alleges, upon information and belief, as follows:

1. Plaintiff MRE brings this action against Defendants Neon Machine, Inc. ("Neon Machine") and Oganesson Factory Limited ("Oganesson Factory"). The allegations are based upon personal knowledge as to itself and its own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of press releases, media, websites, court records and other publicly available reports and information about Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein, after a reasonable opportunity for discovery.

## PRELIMINARY STATEMENT

2. Defendant Neon Machine is a gaming studio which has spent the last four years developing "Shrapnel", a Web3 free-to-play team-based first-person extraction shooter. In order to finance its development, Defendants offered and sold to Plaintiff MRE digital assets, including virtual "Land" in Shrapnel (*i.e.*, non-fungible tokens ("NFTs")), which were unregistered securities and materially misrepresented Shrapnel's launch date in violation of the federal securities laws.

## PARTIES

3. Plaintiff MRE is a corporation valid and existing under the laws of the State of Delaware with its principal place of business located in New York, New York. Its address is 197 Grand Street, Suite 5E, New York, New York 10013.

4. Defendant Neon Machine is a corporation valid and existing under the laws of the State of Delaware with its principal place of business located in Seattle, Washington. Its address is 1700 Westlake Avenue N, Suite 200, Seattle, Washington 98109.

5. Defendant Oganesson Factory is a limited company valid and existing under the laws of, and with its principal place of business located in, the British Virgin Islands ("BVI"). Oganesson Factory is an affiliate of Neon Machine and sponsor of its securities offering.

## JURISDICTION/VENUE

6. **Subject Matter Jurisdiction**. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331. The claims herein arise under federal law and specifically, the Securities Act of 1933 (15 U.S.C. § 77a, *et seq.*).

7. **Personal Jurisdiction**. The Court has personal jurisdiction over Neon Machine because it purposefully solicited the purchase of its securities within New York, transacts business here and supplies goods and services here. The Court has personal jurisdiction over Oganesson Factory because it purposefully solicited the purchase of securities within New York and transacts business here.

8. **Venue**. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b) because the events or acts giving rise to Plaintiff MRE's claim occurred here.

## BACKGROUND

9. There are various kinds of digital "crypto assets," including tokens like Bitcoin and

other blockchains like Ethereum. Bitcoin and Ethereum are not securities because they are not investment contracts whose value is derived from the efforts of others.[1]

10. The price of Bitcoin, for example, is a means of payment whose value is subject to supply and demand like a currency. In other words, there is no "Bitcoin Inc." managing the project.

11. Ethereum, on the other hand, is subject to market forces like a commodity. Its value is derived from "smart contracts" and the perceived value of those that run on the Ethereum protocol.

12. Other types of digital assets, however, derive their value from the success or failure of a given project's issuer or promoter. Investors purchase this type of digital asset with the hope that its value will increase in the future as a certain project grows in popularity, based upon the managerial efforts of the issuer of the asset or token and those working to develop the project.

## FACTS

13. By NFT Purchase Agreement dated July 7, 2022 (the "Agreement"), Plaintiff MRE agreed to purchase an NFT called "VIP Land Periphery" from Argon Asset Ventures Corp. ("Argon"), a Republic of Panama foundation, on behalf of Neon Machine in exchange for $2,500,000. (A true and correct copy of the Agreement is attached hereto as Exhibit 1.)

14. Because this type of digital asset is properly classified as a security under federal law, the issuer of this type of NFT, including Neon Factory, was required to file a registration statement with the U.S. Securities and Exchange Commission ("SEC"), and comply with federal securities laws. Defendant Neon Factory failed to do so.

15. Upon information and belief, by selling these unregistered securities to investors, Defendants reaped tens of millions of dollars.

---

[1] The "Howey" test. *See SEC v. W. J. Howey Co.*, 328 U.S. 293 (1946).

16.     While Plaintiff MRE is an "Accredited Investor" and the parties agreed that the purchase of the VIP Land Periphery would be part of an exempt offering subject to Section 506(c) of Regulation D promulgated under the Securities Act of 1933 ("Reg D"), Neon Factory never filed Form Reg D as required by Section 503.

17.     Specifically, the VIP Land Periphery is a digital parcel of Land in Shrapnel that is intended to be central to game play, the mapping of which should also be in high demand. Its central feature should cause the Land and map ("Map") – both NFTs – to receive a share of the game's income based on player activity within this portion of the map

18.     Plaintiff MRE's decision to purchase the VIP Land Periphery NFT was based on representations made by Neon Machine and its representatives regarding: (a) the timing of the delivery of the NFT; and (b) Plaintiff MRE's ability to monetize the NFT to generate revenue.

19.     The Agreement states that the delivery date for the NFTs is "as soon as possible but no later than Game Launch" (*see* Ex. 1 at §1.2(b)). "Game Launch" is defined as "the date on which [Shrapnel] is functional and has been released as a public beta." *See* Ex. 1 at §1.4(c).

20.     Prior to the purchase, Defendant Neon Machine provided Plaintiff MRE with marketing materials which included a roadmap indicating that Shrapnel would be in "Open Beta" with "general availability" in Q1 of 2023.

21.     By tripartite "Novation" agreement dated April 29, 2024, Plaintiff MRE consented to the substitution of Oganesson Factory for Argon which was released from its duties and obligations under the Agreement. (A true and correct copy of the Novation is attached hereto as Exhibit 2.)

22.     Plaintiff MRE and representatives of Neon Machine maintained semi-regular contact during the period following the purchase of the NFT throughout the end of 2024.

23. In November of 2024, Plaintiff MRE, and Neon Machine's representatives, Co-founder and Head of Business Development Calvin Zhou and its new CEO Kenneth Rosman ("Rosman"), held a virtual meeting during which Rosman stated that the delivery of the NFT would be delayed until 2027 at the *earliest*.

24. On December 13, 2024, Plaintiff MRE emailed a letter (the "Letter") to Rosman at Neon Machine stating that the misrepresentations regarding the timing of the delivery and the NFT's economic utility warrant rescission. (A true and correct copy of the Letter is attached hereto as Exhibit 3.)

## AS AND FOR A FIRST CAUSE OF ACTION
## VIOLATION OF §§ 5 AND 12(a)(1) OF THE SECURITIES ACT OF 1933

### (Neon Machine and Oganesson Factory)

25. Plaintiff MRE repeats and realleges each and every allegation within Paragraphs 1 through 24 as set forth in full herein.

26. Section 5(a) of the Securities Act of 1933 ("Securities Act") states: "Unless a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such security through the use or medium of any prospectus or otherwise; or (2) to carry or cause to be carried through the mails or in interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for delivery after sale." 15 U.S.C. § 77e(a).

27. Section 5(c) of the Securities Act states: "It shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any prospectus or otherwise any security, unless a registration statement has been filed as to such

security[.]" *Id*. § 77e(c).

28. When issued, the "VIP Land Periphery" NFT was a security within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1). Defendants Neon Machine and Oganesson Factory solicited and sold the NFT to Plaintiff MRE. Defendants Neon Machine and Oganesson Factory thus directly or indirectly made use of means or instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or for delivery after sale. No registration statement has been filed with the SEC or has been in effect with respect to this offering.

29. Section 12(a)(1) of the Securities Act provides in relevant part: "Any person who offers or sells a security in violation of section 77e of this title . . . shall be liable, subject to subsection (b), to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security." *Id*. § 77l(a)(1).

30. Accordingly, Defendants Neon Machine and Oganesson Factory have violated Sections 5(a), 5(c), and 12(a)(1) of the Securities Act. *Id*. § 77l(a)(1).

31. To date, despite due demand, Defendants Neon Machine and Oganesson Factory have not refunded the purchase price under the Agreement. Plaintiff MRE has been damaged in the amount of Two Million and Five Hundred Thousand Dollars ($2,500,000.00). As such, Plaintiff MRE seeks rescissory damages with respect to the NFT purchased.

## AS AND FOR A SECOND CAUSE OF ACTION
## VIOLATION OF §12(a)(2) OF THE SECURITIES ACT OF 1933

### (Neon Machine and Oganesson Factory)

32. Plaintiff MRE repeats and realleges each and every allegation within Paragraphs 1 through 31 as set forth in full herein.

33. Section 12(a)(2) of the Securities Act provides a right to relief against any person who offers or sells a security by means of a prospectus or oral communication that includes a false or misleading statement. The person is liable to the purchaser for rescission of the purchase or damages, provided that the purchaser did not know about the misstatement or omission at the time of the purchase.

34. The elements of a Section 12(a)(2) claim are an (a) offer or sale of a security; (b) by the use of a means or instrumentality of interstate commerce; (c) by means of a prospectus or oral communication; (d) that includes an untrue statement of material fact or omits to state a material fact that is necessary to make the statements, in light of the circumstances under which they were made, not misleading.

35. When sold, the "VIP Land Periphery" NFT was a security within the meaning of Section 2(a)(1) of the Securities Act, 15 U.S.C. § 77b(a)(1).

36. Defendants Neon Machine and Oganesson Factory solicited and sold the NFT to Plaintiff MRE.

37. By the Agreement, Defendant Neon Machine and its affiliate, Defendant Oganesson Factory (via Novation from Argon), promised to deliver the NFT to Plaintiff MRE on a delivery date coinciding with the public release date of Shrapnel. *See* Ex. 1 at §§1.2(b) & 1.4(c).

38. Prior to the purchase, Defendants Neon Machine and Oganesson Factory provided Plaintiff MRE with marketing materials dated "OCT 1 V9" which included a roadmap indicating

that Shrapnel would be in "Open Beta" with "general availability" in Q1 of 2023.

39. Based upon their prior experience developing AAA games, Defendants Neon Machine and Oganesson Factory knew that the roadmap for release of Shrapnel was false. In particular, Shrapnel was an innovative Web3 game and would take longer to develop than past Web2 games of similar quality. Furthermore, the development of Shrapnel required additional funding that Neon Machine did not have at the time the roadmap was published. And, as an innovative game, Shrapnel would likely suffer from feature-creep as the game evolved and thus, cause further delays.

40. Defendants Neon Machine and Oganesson Factory knew of these facts but did not at that time want to publish an expected release date any later than Q1 of 2023 out of fear that investors would find that timeline too risky and choose not to invest.

41. In reliance upon Defendants Neon Machine and Oganesson Factory's false representations regarding the timing of delivery of the NFT, Plaintiff MRE entered into the Agreement.

42. Accordingly, Defendants Neon Machine and Oganesson Factory have violated Section 12(a)(2) of the Securities Act. *Id*. § 77l(a)(2).

43. To date, despite due demand, Defendants Neon Machine and Oganesson Factory have not refunded the purchase price under the Agreement. Plaintiff MRE has been damaged in the amount of Two Million and Five Hundred Thousand Dollars ($2,500,000.00). As such, Plaintiff MRE seeks rescissory damages with respect to the NFT purchased.

### AS AND FOR A THIRD CAUSE OF ACTION
### BREACH OF CONTRACT

**(Neon Machine and Oganesson Factory)**

44. Plaintiff MRE repeats and realleges each and every allegation within Paragraphs 1

through 43 as set forth in full herein.

45. By the Agreement, Defendant Neon Machine and its affiliate, Oganesson Factory (via Novation from Argon) promised to deliver the NFT to Plaintiff MRE on a delivery date coinciding with the public release date of Shrapnel. *See* Ex. 1 at §§1.2(b) & 1.4(c).

46. Prior to the purchase, Defendants Neon Machine and Oganesson Factory provided Plaintiff MRE with marketing materials dated "OCT 1 V9" which included a roadmap indicating that Shrapnel would be in "Open Beta" with "general availability" in Q1 of 2023.

47. To date, Shrapnel has not been released and the NFT has not been delivered in breach of the Agreement.

48. As a result of the breach, Plaintiff MRE has been damaged in the amount of Two Million and Five Hundred Thousand Dollars ($2,500,000.00).

## AS AND FOR A FOURTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY

### (Neon Machine and Oganesson Factory)

49. Plaintiff MRE repeats and realleges each and every allegation within Paragraphs 1 through 48 as set forth in full herein.

50. By investing in Shrapnel, Plaintiff MRE entered into a fiduciary relationship with Defendants Neon Machine and its affiliate Oganesson Factory.

51. As fiduciaries, Defendants Neon Machine and Oganesson Factory had a duty to disclose to Plaintiff MRE the true anticipated delivery date of the NFT.

52. As a result of Defendants Neon Machine and Oganesson Factory's wrongful acts in concealing and misrepresenting this fact, Plaintiff MRE purchased the NFT and has been significantly damaged thereby.

53. As a result of this breach of fiduciary duty, Plaintiff MRE has been damaged in the

amount of Two Million and Five Hundred Thousand Dollars ($2,500,000.00).

## AS AND FOR A FIFTH CAUSE OF ACTION
## FRAUD

**(Neon Machine and Oganesson Factory)**

54. Plaintiff MRE repeats and realleges each and every allegation within Paragraphs 1 through 53 as set forth in full herein.

55. Defendants Neon Machine and its affiliate Oganesson Factory solicited and sold the NFT to Plaintiff MRE.

56. By the Agreement, Neon Machine and its affiliate, Oganesson Factory (via Novation from Argon) promised to deliver the NFT to Plaintiff MRE on a delivery date coinciding with the public release date of Shrapnel. *See* Ex. 1 at §§1.2(b) & 1.4(c).

57. Prior to the purchase, Defendant Neon Machine and Oganesson Factory provided Plaintiff MRE with marketing materials dated "OCT 1 V9" which included a roadmap indicating that Shrapnel would be in "Open Beta" with "general availability" in Q1 of 2023.

58. As set forth above, based upon its prior experience developing AAA games, Defendants Neon Machine and Oganesson Factory knew that the roadmap for release of Shrapnel was false.

59. Defendants Neon Machine and Oganesson Factory did not want to publish at that time an expected release date any later than Q1 of 2023 out of fear that investors would find a longer timeline too risky and choose not to invest. Further, Plaintiff RME is a fund with a term of five-years. As such, its investment horizon is simply too short to invest in the NFT if will not be made available until 2027.

60. In reliance upon Defendants Neon Machine and Oganesson Factory's false representations regarding the timing of delivery of the NFT, Plaintiff MRE entered into the

Agreement.

61. As a result of the false representations and Plaintiff MRE's reasonable reliance thereon, Plaintiff MRE has been damaged in the amount of Two Million and Five Hundred Thousand Dollars ($2,500,000.00).

WHEREFORE, Plaintiff MRE demands judgment against Defendants in the amount of Two Million and Five Hundred Thousand Dollars ($2,500,000.00), with interest, plus its attorneys' fees and costs, including disbursements; and whatsoever the Court shall otherwise deem just and proper.

Dated: New York, New York
       December 4, 2025

                                    William B. Kerr
                                    Kerr LLP
                                    260 Madison Avenue, 16th Floor
                                    New York, NY 10016
                                    (212) 423-0305
                                    *Attorneys for Realm Metaverse Real Estate Inc.*